# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALLAN SMITH,**

      **Petitioner,**

**v.**                                            **Civil Action No. 2:06cv121**
                                                          **(Judge Maxwell)**

**DOMINIC A. GUTIERREZ,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner initiated this case on December 14, 2006, by filing an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241 in which he seeks an order directing the Bureau of Prisons ("BOP") to transfer him to a Community Corrections Center ("CCC") for the last six months of his term of imprisonment. On February 6, 2006, petitioner paid the required $5.00 filing fee. On May 29, 2006, the undersigned made a preliminary review of the file and determined that summary dismissal was not warranted at that time. Consequently, the respondent was directed to file an answer to the petition and did so on June 28, 2007, by filing a Response to Show Cause Order and Motion To Dismiss. On June 29, 2007, a Roseboro Notice was issued. On July 2, 2007, the petitioner filed a copy of his Institutional Referral For CCC Placement and an Amended Brief in support of his petition. On July 11, 2007, the petitioner filed a response to the respondent's Motion to Dismiss.

This matter is pending before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, <u>et</u> <u>seq</u>.

## I. Facts

On June 7, 2005, in the United States District Court for the Eastern District of Pennsylvania, petitioner pleaded guilty in 2:05CR287-2 to Conspiracy to Commit Credit Card Fraud, in violation of 28 U.S.C. § 1029(b)(2); Possession of Devise Making Equipment with Intent to Commit Fraud; Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1029(a)(4); and Production of Counterfeit Access Devises with Intent to Commit Fraud in violation of 18 U.S.C. § 1029(a)(1). On November 22, 2005, the petitioner was sentenced to a forty month term of confinement. Petitioner was also sentenced to three years supervised release. On December 1, 2005, the United States District Court for the Eastern District of Pennsylvania entered an Order revoking the petitioner's Supervised Release in 2:97cr-00460 and ordered him committed to the custody of the Bureau of Prisons for eleven months to run concurrently with the forty month sentence imposed in 2:05cr287-2. Petitioner was designated to the Federal Correctional Institution in Morgantown (FCI Morgantown), West Virginia on November 26, 2006. Assuming good time credit, petitioners' projected release date is June 22, 2008.

On June 22, 2007, the BOP reviewed petitioners' eligibility for CCC placement.[1] Upon review, the BOP determined that the petitioner meets the qualifications for CCC placement and recommended that petitioner be transferred to a CCC on or about March 11, 2008. In other words, the last 92 days of his sentence served, or two days into the final 10% of his term of imprisonment.

## II. Contentions of the Parties

Petitioner raises the following ground in his Application for Habeas Corpus:

(1) The Bureau of Prisons' policy of transferring prisoners to a CCC for the last 10% of their term of imprisonment has been ruled unconstitutional.

---

[1] Since the filing of this action, the BOP now refers to such centers as Residential Release Centers ("RRC). For purposes of this Order, however, the Court will continue to refer to the facilities as CCCs.

2

The Government contends that the petition should be dismissed because:

(1) Title 18, Section 3624(c), not § 3621 govern petitioner's request for a six-month CCC placement.

(2) The February 2005 Rules are valid and entitled to substantial deference; and

(3) The Bureau properly exercised its discretion in a categorical manner by limiting placement in CCCs to the last ten percent of an inmate's sentence served, not to exceed six months.

### III. Historical Background

Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. See BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. Section 3624(c) provides as follows:

> The Bureau of Prisons shall, to the extent practicable, assure that
> a prisoner serving a term of imprisonment spends a reasonable part,
> not to exceed six months, of the last 10 per centum of the term to be
> served under conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's re-entry into
> the community. The authority provided by this subsection may be
> used to place a prisoner in home confinement. The United States
> Probation System shall, to the extent practicable, offer assistance
> to a prisoner during such pre-release custody.

The BOP adopted the Office of Legal Counsel's interpretation of the statute, and numerous habeas petitions challenging the December 2002 Policy were filed. The First and Eighth Circuits, as well as many district courts, [2] found the policy contrary to the plain meaning of 18 U.S.C. §

---

[2]See Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004); Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004); Cato V. Menifee, 2003 WL 22725524 at *4 (S.D.N.Y. Nov. 20, 2003 (collecting

3

3621(b) which states:

> The Bureau shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence -
>
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In response to those decisions, the BOP created new regulations in 2005 governing the placement of inmates in CCCs. These regulations state that the BOP was engaging in a "categorical exercise of discretion" and choosing to "designate inmates to [CCC] confinement . . . during the last ten percent of the prison sentence being served not to exceed six months." 28 C.F.R. § 570.20-21. The new regulation expressly prohibits placement of prisoners in CCCs prior to the pre-release phase of imprisonment and provides:

> When will the **Bureau designate** inmates to **community** confinement?

---

cases).

>   (a) The Bureau will designate inmates to community confinement only
>   as part of pre-release custody and programming, during the **last ten percent**
>   of the **prison sentence** being **served**, not to exceed six months.
>
>   (b) We may exceed the time-frames only when specific Bureau programs
>   allow greater periods of community confinement, as provided by
>   separate statutory authority (for example, residential substance abuse
>   treatment program . . . or shock incarceration program) . . .

28 C.F.R. § 570.21. (Emphasis added)

It is this regulation which prompts the petitioner's habeas challenge in the instant case.

## IV. Analysis

### A. The Constitutionality and Validity of the 2005 Rules

#### 1. Petitioners' contentions

In the petition, the petitioner asserts that he was told by his counselor, that as a matter of policy, he could not be transferred to a CCC until the last 10% of his sentence, or until approximately the last 3.5 months of his sentence. Petitioner asserts that such policy has been ruled unconstitutional by the Second, Third and Eighth Circuits and he is being unlawfully denied transfer to a CCC for the last six months of his sentence. As relief, petitioner request the Court grant his writ and order the BOP to transfer him to a CCC for the last six months of his sentence.

In support of his claims, petitioner asserts that the BOP's 10% policy represents a categorical rule which places durational limits on CCC confinement. Petitioner asserts such rule contradicts the plain meaning of 18 U.S.C. § 3621(b) and has been found unlawful by the Second, Third and Eighth Circuits because it contravenes unambiguously expressed congressional intent. In addition, although petitioner concedes that the BOP has discretion under § 3621(b) to make placement determinations, petitioner asserts that § 3621(b) sets specific parameters which limit that discretion. Therefore, petitioner asserts that the BOP may not implement categorical rules which

5

do not take into account the limits of its discretion.

## 2. Respondents' contentions

In his response to the Court's show cause order, the respondent argues that the February 2005 rules are valid because the BOP has properly exercised its discretion in a categorical manner through its rule-making power. In support of this claim, the Respondent argues that 18 U.S.C. § 3624 (c) governs his claim and not 18 U.S.C. § 3621(b) as petitioner suggests. In addition, the Respondent argues that the BOP's interpretation of the statute is entitled to substantial deference under the standard set forth in Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).[3]

Second, the Respondent argues that § 3621(b) does not require the Bureau to consider transferring inmates to any facility. Moreover, the Respondent argues that the BOP has broad discretion in designating the place of a prisoner's imprisonment.[4] Given the Bureau's sweeping

---

[3] In Chevron, the Supreme Court dictated that courts should presume "that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." See Smiley v. Citibank, 517 U.S. 735, 739 (1996). Therefore, the Court established a two-step test for reviewing an agency's statutory construction. The first step begins with determining "whether Congress has directly spoken to the precise question at issue." Chevron at 842-43. If Congress' intent is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If there is ambiguity in the statute, the court must then determine whether the agency's construction of the statute is reasonable. Id. at 844. The agency's construction of the statute is given "substantial deference," Blum v. Bacon, 457 U.S. 132, 141-142, and will be upheld unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron at 844.

[4] In fact, the respondent asserts that this Court has previously held that the February 2005 Rules are a lawful exercise of the BOP's broad discretion under § 3621(b) to determine an inmate's place of imprisonment. Response at 12-13 (citing Goolsby v. Ashcroft, No. Civ. A. 1:04cv145, 2005 WL 1165773 at *3 (N.D.W.Va. Apr. 29, 2005). However, in Goolsby , the Court was addressing whether the February 2005 Rules violated the *ex post facto* clause or the Administrative Procedures Act. The Court found that it does not. In so finding, the Court noted that the 2005 Rules *appeared* to operate within the letter of the statute [§ 3624(c)] and appeared to meet the spirit and intent of that statute. Goolsby at *3. Not at issue at that time was whether the 2005 Rules contradicted the express intent of § 3621(b). Thus, the Court did not find that the 2005 Rules were a lawful exercise of the BOP's discretion under § 3621(b)

6

authority," the Respondent asserts that "its method for making placement determinations is entitled to substantial deference, and inmates such as Petitioner do not have the statutory right under § 3621(b) to require the Bureau to consider transferring them to a CCC or any other facility at any particular time." Response to Show Cause Order (dckt. 18-2) (hereinafter Response) at 11.[5]

Third, the respondent argues that the Supreme Court has upheld the BOP's ability to categorically exercise the discretion Congress has statutorily granted it. See Response at 12 (citing Lopez v. Davis, 532 U.S. 230, 233-34 (2001)). The respondent further argues that the issue presented in this case is strikingly similar to that before the Supreme Court in Lopez. Therefore, the respondent asserts that "[t]he Bureau's decision to restrict CCC placements to prisoners serving the final ten percent of their sentences is a lawful categorical exercise of the agency's discretion, just as the categorical exclusion of certain crimes from early release eligibility was lawful in Lopez." Id. at 18.

Fourth, the respondent asserts that § 3621(b)'s statutory language and legislative history show that the statute's listing of certain factors does not curb the Bureau's discretion. In support of this contention, the respondent asserts that the provisions of § 3621(b) make it plain that the Bureau has the discretion, but not the duty to consider the enumerated factors in making decisions.

---

as the respondent has suggested as that issue was not squarely before the Court at that time. Likewise, the Court's decision in Esposito v. Ashcroft, No. Civ. A. 1)4CV145, 2005 WL 1165773 (N.D.W.Va. Jan. 14, 2005) also addressed only whether or not the February 2005 Rules violated the *ex post facto* clause or the Administrative Procedures Act. Finally, while this Court found in Kenan v. Francis, No. 2:05cv76, 2006 WL 29000109 (N.D.W.Va. June 13, 2006), that the BOP properly exercised its authority to deny placement in a CCC to those inmates who have not served 90% of their sentence, that opinion did not weigh the decisions of the Four Court of Appeals that have addressed the merits of the issue.

[5] To this end, the Court does not believe that the Petitioner is arguing that § 3621(b) requires that the BOP consider him for placement in a CCC. Instead, the Court understands petitioner's argument to be that the BOP may consider him for placement in a CCC under § 3624(c), but in doing so, must consider the five factors enumerated in § 3621(b). Accordingly, the Court finds this argument to be moot and has not considered it in more detail throughout this Order.

The respondent relies on Congress's use of the word "may," as opposed to "shall" in the statute. In addition, the respondent asserts that the legislative history shows that the enumerated factors were not intended to limit or restrict that BOP's exercise of its discretion under § 3621(b). Therefore, the respondent argues that the factors enumerated in § 3621 were intended to be nonexclusive and that they do not limit the Bureau's discretion.

Fifth, the respondent contends that the Bureau did in fact consider the five enumerated factors in § 3621(b) when issuing the February 2005 rules. In support of this claim, the respondent asserts that "[i]n proposing the 2005 Rules, the Bureau considered the resources of the facility contemplated, . . . when it reasoned that CCC's are 'particularly well suited as placement options for the final portion of the offenders' prison terms.'" Response at 16-17 (quoting 70 Fed. Reg. at 1660). In addition, the Bureau reasoned that "'[b]y ensuring that offenders sentenced to prison terms not be placed in CCCs except during the last ten percent of their prison sentences (not to exceed six months), the new rule will help ensure that CCCs remain available to serve the purposes for which their resources make them best suited." Id. at 23. Moreover the respondent asserts that the rule expressly incorporates the length of the prisoner's sentence into an inmate's CCC placement for purposes of determining the length of time necessary to transition back into the community. Id. Also considered were policy statements pertinent to statements issued by the Sentencing Committee and the statutory mandate that no favoritism be given prisoners of high social or economic status. Id. Finally, the respondent asserts that the February 2005 Rules make it clear that the Bureau continues to consider the exhaustive list of factors in § 3621(b) when making its placement decisions. Id. at 18.

### 3. Pertinent Caselaw

The Third Circuit Court of Appeals was the first court of appeals to address the issue raised in the instant case. In Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005), the Third Circuit recognized that the various district courts to address this issue were split as to the validity of the BOP's 2005 regulations. See Woodall at 244 (collecting cases). However, after analyzing the conflicting opinions, the Third Circuit found the regulation unlawful. Id. Specifically, the Third Circuit found that the governing statute, 18 U.S.C. § 3621(b), "lists five factors that the BOP must consider in making placement and transfer determinations. The 2005 regulations, which categorically limit the amount of time an inmate may be placed in a Community Corrections Center ("CCC"), do not allow the BOP to consider these factors in full." Id. at 237. More specifically, the Court noted:

> [t]he regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Id. at 244.

In coming to this conclusion, the Third Circuit rejected the same arguments made by the respondent in this case. Moreover, the three other Courts of Appeals who have addressed this issue have made similar findings. See Wedelstedt v. Wiley, 477 F.3d 1160 (10th Cir. 2007); Levine v. Apker, 455 F.3d 71, 85-87 (2d Cir. 2006); Fults v. Sanders, 442 F.3d 1088, 1092 (8th Cir. 2006). Therefore, although none of the Circuit opinions have been unanimous, and in fact, there were

9

strong dissents in each case,[6] the clear weight of authority at this time suggests that the regulations are invalid. Upon a review of those cases, including the dissenting opinions, this Court is persuaded that the regulations are invalid for the reasons set forth in Woodall, Fults, Levine and Wedelstedt.

**4. Discussion**

The language of § 3621 is clear. Each of the five enumerated factors must be considered by the BOP in making placement and transfer determinations. The 2005 regulations simply do not allow the BOP to consider the three individualized factors.[7] Those factors include, the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate.[8] See 18 U.S.C. § 3621(b)(2)-(4).

---

[6] See Wedelstedt, 477 F.3d at 1169-71 (Hartz, Circuit Judge, dissenting)(agreeing that § 3621 requires the BOP to consider each of the five enumerated factors, but finding that the BOP properly performed such duty when it reasonably considered each of the five factors in promulgating its general rule) ; Levine, 455 F.3d at 87-91 (Raggi, Circuit Judge, dissenting) (construing the rule as "a permissible categorical rejection of CCCs as appropriate and suitable facilities for § 3621(b) designations generally" with limited statutorily identified exceptions including "those catalogued in § 3621(b)," finding the rule comports with § 3624(c)'s express time limitations, and finding Lopez supports the Bureau's "categorical rejection of CCCs for general § 3621(b) designations (i.e., placements not involving § 3624(c) or other statutory concerns)"); Fults, 442 F.3d at 1093 (Riley, Circuit Judge, dissenting ) (finding that the "BOP's categorical rules governing transfer of inmates to CCCs, and implementing section 3624(b), do not conflict with the factors enumerated in section 3621(b)"); Woodall, 432 F.3d at 251-52 (Fuentes, Circuit Judge, dissenting) (agreeing that § 3621(b) requires the BOP to consider each of the five enumerated factors listed in the statute, but finding that the BOP is not required to consider the factors until the inmate is actually considered for transfer and that such consideration is not required "until the lesser of six months or ten percent of the inmate's sentence remains").

[7] Accordingly, the Court need not go past the first step of the Chevron analysis. Even if it could, the BOP's interpretation is contrary to the statute and is not due deference.

[8] Nor could these factors have been considered when the BOP implemented its February 2005 Rules because each of these factors can only be considered by examining the history and circumstances of the individual prisoner.

Moreover, the undersigned agrees that Lopez v. Davis, supra, fails to support the BOP's categorical decision-making at question in this case. In Lopez, the Supreme Court upheld the validity of a BOP rule excluding certain inmates from early release under 18 U.S.C. § 3621(e)(2)(B). Lopez, 531 U.S. at 243-44. Under that statute, the BOP has been given the discretion to reduce the prison term of an inmate convicted of a "non-violent" offense if the inmate successfully completes a substance abuse program. Id. at 232. Because the statute does not define what constitutes a "non-violent" offense, the BOP implemented a regulation categorically denying early release to prisoners convicted of a felony involving "the carrying, possession, or use of a firearm." Id. The Lopez Court upheld the categorical decision making of the BOP because the statute does not define the term "nonviolent offense," and at the same time, gives the BOP the discretion to determine which inmates are offered pre-release. Id. 235-238. Therefore, the Court reasoned that it was permissible for the BOP to use its discretion to define the term "nonviolent offense" and to categorically exclude certain inmates for early release consideration based on that definition. Id. The Court's decision though, was clearly grounded in the discretion afforded the BOP under the statute and the ambiguity in defining what constitutes a nonviolent offense. None of those factors are at play in the instant case.

Although the BOP does have some discretion under § 3621(b) in determining the actual place of an inmate's confinement, the BOP is required to consider each of the five factors before making placement and transfer determinations. There is no ambiguity that the BOP can or must define. In addition, Lopez is further distinguishable because § 3621(e)(2)(B) does not require the BOP to make individualized determinations as does § 3621(b). However, the undersigned notes that individualized determinations are not necessarily dispositive of the issue. In Lopez, the Court stated that "[e]ven if a statutory scheme requires individualized determinations . . . the decision maker has

11

the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez, 531 U.S. 243-44 (internal quotations omitted). Nonetheless, sentencing recommendations and the history and characteristics of the prisoner are not generally applicable. Moreover, Congress does "appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." Woodall, 432 F.3d at 247.

Although the undersigned agrees with the four Courts of Appeals and believes the petitioner's writ of habeas corpus should be granted, petitioner is advised that such decision does not entitle him to an Order from this Court directing that he be immediately transferred to a CCC. The undersigned has determined that the BOP's regulations are invalid only to the extent that his placement in a CCC is limited to the lessor of 10% of his sentence, or six months, without consideration of the five factors set forth in 18 U.S.C. § 3621(b). Thus, in granting the instant writ, petitioner is merely entitled to have his CCC placement considered in accordance with the five factors set forth in § 3621(b).

## V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (dckt.. 18) be **DENIED**, the petitioner's §2241 petition be **GRANTED,** and the BOP be directed to reconsider petitioner for CCC placement in accordance with the five factors set forth in § 3621(b).

Within ten (10) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should

also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984); .

    The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner and to counsel of record.

    DATED: July 17, 2007

                                                 /s/ James E. Seibert
                                                JAMES E. SEIBERT
                                                UNITED STATES MAGISTRATE JUDGE